CHARLES S. WALLING et al., Appellants, v. IOWA MUTUAL LIABILITY INSURANCE Co. et al., Appellees; H. L. NEHLS INVESTMENT Co. et al., Intervenors, Appellants.

No. 44993.

504

MAY 14, 1940.

Crissman & Bleakley, H. L. Nehls, Jr., and E. A. Johnson, for appellants.

C. J. Lynch and G. P. Linville, for appellees.

MILLER, J.—The questions presented by this appeal arise upon the pleadings and concern only the propriety of a ruling

on a motion to strike the plaintiffs' reply to the defendants' answer. The pleadings are quite voluminous and the questions are not as simple as might at first appear.

On May 26, 1938, plaintiffs filed a petition in equity, which is voluminous, comprising 22 pages of the abstract. The facts asserted thereby are substantially the following: The Iowa Mutual Liability Insurance Company and the Preferred Class Mutual Insurance Company are two Iowa corporations, the former organized in 1909 and the latter in 1910, both under what is now chapter 404 of the Code. The insurance lines authorized for the Iowa Mutual are those specified in paragraphs 5 and 6 of section 8940 and paragraph 2 of section 8941, whereas the lines authorized for the Preferred Class are those specified in paragraphs 1 and 9 of section 8940. The members of the board of directors for the two companies were substantially identical, as were the officers. The individual defendants are such officers and directors. Under the statutes and the articles of incorporation of the two companies, each policyholder is a member and is entitled to one vote. Plaintiffs are policyholders of the Preferred Class. On December 31, 1936, that company had assets of $354,471.11, of which $169,202.05 was surplus, the net worth was $209,450.83, exclusive of good will, which was asserted to be worth $100,000. Defendants, to unjustly enrich themselves and to defraud the members of the Preferred Class, entered into a scheme whereby the Iowa Mutual acquired the assets of the Preferred Class. This scheme was concealed from plaintiffs. Plaintiffs were misled and misinformed and prevented from asserting their rights against the scheme. Pursuant to the scheme, the Preferred Class purported to sell and assign its assets to the Iowa Mutual and they were taken over by the latter. The Preferred Class ceased to engage in the business for which it was organized. The purported sale was illegal, not authorized by the articles of incorporation, without consideration, for inadequate consideration, fraudulent and void. The Iowa Mutual was unjustly enriched and has commingled the assets of the two companies. The assets of the

Preferred Class are in danger of being dissipated and lost. The defendants are unfit to act as officers and directors of the Preferred Class and have abandoned the Preferred Class and its members. Plaintiffs have demanded that the defendants rescind the pretended sale and they have refused to act. A receiver should be appointed to conserve the assets of the Preferred Class. Plaintiffs have no adequate remedy at law. The suit is a class suit for the benefit of others situated similarly to the plaintiffs.

The prayer of the petition was that the purported transfer of assets be declared to be void, the assets of the Preferred Class be restored to it, defendants be held to account for the same, a trust be impressed thereon, a receiver be appointed to restore them to the Preferred Class and restore said corporation to function in accordance with its articles of incorporation and for general equitable relief and costs.

Defendants filed answer, which is in five divisions or counts. Each division refers to and incorporates the preceding allegations of the answer so that each is cumulative. The answer comprises 17 pages of the abstract, and presents substantially the following issues:

Certain allegations of the petition are admitted and all others are denied. The answer admits the organization of the two corporations, the purposes for which they were incorporated, the fact that the personnel of the boards of directors and the officers of the two corporations were substantially identical, that the individual defendants are such officers and directors, that the Preferred Class has ceased to do business and its assets have been transferred to the Iowa Mutual, that demand has been made by plaintiffs to rescind such transfer and defendants have refused such demand.

The answer specifically denies the allegations of fraud, deceit, concealment, dishonesty, bad faith, etc., and asserts the following facts:

The Iowa Mutual reinsured over 90 percent of the business written by the Preferred Class. Except for a small amount of fire and windstorm insurance written by the Preferred Class,

both companies wrote similar lines of insurance. The fire and windstorm insurance of the Preferred Class was written through the Mutual Fire Underwriters in such a manner that it was placed in six companies, of which the Preferred Class was one, each company assuming a several liability of 18 percent on each of the policies so written. In November 1936, the merger of the two companies was under consideration, and, since the Iowa Mutual could not assume or reinsure the fire and windstorm business, a contract of reinsurance was made with the other five companies, who were insurers on the policies written by the Mutual Fire Underwriters, whereby said five companies became substituted for the participation of the Preferred Class in such policies, and the liability thereon was redistributed so that each of said five companies had 20 percent of such liability and the Preferred Class was relieved from all liability thereon. This contract of reinsurance was approved by the commissioner of insurance and accepted by the policyholders. When the policies then in force expired, new policies were taken out in each instance with the liability limited to said five companies to the exclusion of the Preferred Class.

After the Preferred Class had disposed of its fire and windstorm business, as aforesaid, and its lines of insurance had been limited to those in which the Iowa Mutual was also authorized to write and engaged in writing, the two companies in January 1937 undertook to effect a merger and consolidation. The proposal was submitted at the annual meeting of the members of each corporation in January 1937 and approved by the members of each corporation. The contract was entered into under date of February 4, 1937, providing for the transfer and assignment by the Preferred Class to the Iowa Mutual of all its assets and property, the receding to the Iowa Mutual of all automobile insurance ceded to the Preferred Class, the reinsurance with the Iowa Mutual of all insurance written direct by the Preferred Class, and the Iowa Mutual assumed all liabilities and obligations of the Preferred Class. The merger was submitted to and approved by the commissioner of insurance and

the attorney general. The members of the Preferred Class at the time of such merger became members of the Iowa Mutual.

In addition to the foregoing, there were other allegations to the effect that the merger of the two corporations was necessary and desirable, legally effected, accomplished in good faith, acquiesced in by plaintiffs, and that plaintiffs are now estopped to question the same. It was also asserted that the statutes of Iowa provide for the exclusive remedy, in a situation such as plaintiffs allege, and plaintiffs have failed to comply with such statutes. The prayer was for dismissal of the suit and for costs.

Plaintiffs filed a reply to the answer. It was thereafter amended and ultimately included 21 counts or divisions, the divisions being cumulative in the same manner as the divisions of the answer. The reply comprises over 40 pages of the abstract. The issues asserted by such reply are substantially the following:

In addition to the denial of the answer implied by law, the reply denied all allegations except such as were fully and unqualifiedly admitted. In addition thereto, the reply asserted the following contentions: On December 31, 1936, the Preferred Class had outstanding policies of fire, tornado, windstorm, cyclone, hail, sprinkler leakage, riot, civil commotion, explosion and plate glass insurance, on which the unearned premiums amounted to approximately $28,500, which lines the Iowa Mutual was not authorized to write. Section 9116 of the Code prohibits the Preferred Class from consolidating with a company not authorized to write such lines and section 9118 makes such consolidation a criminal offense. The reinsurance agreement with the five companies as to the fire business of the Preferred Class was fraudulent, known to be illegal, and the first step in the scheme to assign the assets of the Preferred Class to the Iowa Mutual. The representation that the Iowa Mutual owned 92 percent of the assets of the Preferred Class was false and fraudulent. In December 1936, defendants published to members of the Preferred Class a statement that said corporation intended to continue in business and plaintiffs relied thereon; the only notice of intention to cause a merger was an insignificant and

insufficient statement published in certain newspapers; plaintiffs were not notified, advised or apprised that their rights would be terminated as asserted by the defendants.

The reply also asserted that, at the annual meeting of the Preferred Class, on January 26, 1937, only a small minority of the membership was present, all under the domination and control of the defendants, the representations there made that the two companies were engaged in the same lines of insurance were false, the proposed merger was ultra vires, fraudulent, illegal, without consideration, for inadequate consideration, and in violation of the duties defendants owed the plaintiffs. The annual meeting of the Iowa Mutual was on the same day, at the same time and place, with the same persons present, with the same false representations made and those present knew, or should have known, that the merger was prohibited by section 9116 of the Code and that the transfer of assets would be ultra vires, fraudulent, illegal, without consideration, or for inadequate consideration, and void.

The reply also asserted that the contract of February 4, 1937, was ultra vires, fraudulent, illegal, without consideration, or for inadequate consideration, and void, and that the purported dissolution of the Preferred Class on July 26, 1937, was made by 15 persons, all under the domination of the defendants and same was fraudulent, illegal, without notice to plaintiffs, and void; that the approval of the commissioner of insurance and the attorney general to the merger was obtained by misrepresentation, wrongful conduct, and illegal acts of the defendants and was, therefore, fraudulent, illegal, and void.

It was also asserted that the business of the Iowa Mutual is affected with a public interest and the contract of February 4, 1936, is against public policy, that the approval of the attorney general and the insurance commissioner to such contract is unconstitutional, in violation of section 9, Article I of the Constitution of Iowa, and section 1 of the 14th Amendment to the Constitution of the United States, and that section 9115 of the Code is unconstitutional in violation of sections 1, 6, and

9 of Article I, section 1 of Article III, section 1 of Article V of the Constitution of the state of Iowa, and section 1 of the 14th Amendment to the Constitution of the United States. The prayer of the reply was for the same relief as prayed for in the petition, as amended.

The defendants filed a motion to strike or dismiss the several divisions of plaintiffs' reply. This motion was later amended to make the same applicable to the amendments to the reply. The motion is quite voluminous, comprising approximately 17 pages of the abstract. For reasons hereinafter stated, we will refer to such issues only which are controlling in the disposition of this appeal. The court sustained the motion to strike the reply generally and on all grounds. Plaintiffs have appealed from such ruling to this court.

Since the motion to strike the reply was sustained generally and on all grounds, appellants cannot prevail in this court unless they successfully challenge each ground of the motion. St. Peter v. Pioneer Theatre Corp., 227 Iowa 1391, 291 N. W. 164, and cases therein cited. Appellants recognize such duty and, in undertaking to discharge the same, have presented for our consideration a brief and argument of 581 pages. In view of the disposition which we make of this appeal, it is not necessary that we discuss or decide many of the questions presented and argued therein, but only those which are controlling here.

It will be noted from the foregoing summary of the pleadings that, in the petition, plaintiffs assert that the assets of the Preferred Class were wrongfully transferred to the Iowa Mutual. In the answer, it is asserted that the transfer of such assets was proper, pursuant to a contract of merger entered into between the two companies. The purpose of the reply is to challenge the merger. In the motion to strike the reply, defendants assert, in support of their motion to strike all allegations "wherein an attack upon the validity of the merger is sought to be made," the following grounds: "That the statutes provide quo warranto as the exclusive procedure for testing the validity

of a corporate organization, or merger or consolidation of corporations, and for testing the constitutionality of the Act under which the merger or consolidation has been effected, and the validity of such merger or consolidation cannot be challenged in an equitable action, and particularly cannot be challenged collaterally in a Reply in such action.''

We are disposed to the view, and hold, that the position asserted in the motion to strike, above quoted, must be sustained and that, in all particulars where the motion is based upon such ground, the court was clearly right in sustaining the motion, irrespective of the other grounds asserted. Accordingly, we undertake to discuss and decide the issue presented by defendants' contention that the proper remedy to test the validity and legality of the merger, which plaintiffs undertake to challenge in their reply, was by quo warranto and not by a suit in equity.

The general rule is stated in 51 C. J. 314, as follows: ''In the absence of a valid statute conferring equitable jurisdiction, there is no concurrent remedy in equity when quo warranto is available and affords an adequate remedy.'' And again, in 21 C. J. 67, it is stated: ''Inasmuch as quo warranto or proceedings in the nature of quo warranto, or, in some jurisdictions, mandamus, afford an adequate and generally exclusive remedy in such cases, a court of equity will not usually interfere to try the title to a public office, or an office in a corporation, or to try the validity of a corporate organization, or the validity of corporate acts.''

The statutory provisions, applicable to quo warranto, appear in chapter 531 of the Code, being sections 12417 to 12439, inclusive. Section 12417 of the present Code appeared in substantially the same form as section 3345 of the Code of 1873. In the case of State ex rel. Phillips v. Fidelity & Casualty Co., 77 Iowa 648, 42 N. W. 509, this court was called upon to construe the quo warranto statute as it appeared in the Code of 1873. In that case, quo warranto proceedings were commenced against the defendant insurance company, asserting that it was

undertaking to write lines of insurance which it was not author-
ized to write under the Iowa statutes. The insurance company
demurred to the petition. The demurrer was overruled and
judgment was entered that the defendant be excluded from at-
tempting to carry on more than one of the kinds of insurance
written by it. Appeal was taken. The judgment was affirmed.
After quoting from section 3345 of the Code of 1873, we state
at page 651 of 77 Iowa, at page 510 of 42 N. W., as follows:

"The allegations of the petition are clearly within the pur-
view of the quoted provisions of the statute, by averring that
the defendant, by the making of the several kinds of insurance,
has been and is still offending against the laws of the state. If
thus offending, it must certainly be exercising powers not con-
ferred by law."

In this case, one of the grounds for appellants' attack
upon the merger is that in such merger the Iowa Mutual under-
took to reinsure lines of insurance of the Preferred Class, which
the statutes prohibit the Iowa Mutual from writing. The ques-
tion is similar to that decided in the case last above quoted
from. Appellants assert, however, that quo warranto is not ap-
propriate because the judgment, specified by section 12428 of the
Code, is required to be that the defendant be ousted from its
franchise or privilege, and that different relief is here sought.
The argument of counsel ignores the provisions of section 12429
of the Code, wherein it is provided that, if the defendant be
found to have exercised merely certain individual powers and
privileges to which it was not entitled, the judgment shall be
only in relation to those particulars in which it is exceeding the
lawful exercise of its rights and privileges. This statute ap-
peared as section 3357 of the Code of 1873 and must have been
applied in the Fidelity & Casualty Company case above quoted
from. In that case, the prayer of the petition was that the de-
fendant be ousted and excluded from writing certain kinds of
insurance, and the judgment was not that it be ousted from
its franchise, but that it be excluded from attempting to carry

on more than one of the kinds of insurance it was undertaking to write.

The allegations of the reply also undertake to put in issue the validity of the dissolution of the Preferred Class in July 1937. It is the contention of appellees that, by virtue of the merger and transfer of the assets and pursuant thereto, the Preferred Class was thereafter dissolved and does not now legally exist. It is the contention of appellants that the purported dissolution of the Preferred Class is void, that the corporation should be adjudged to be still in existence, its property restored to it, and that it be restored to the functions for which it was originally organized. By reason of these contentions, it would seem that our decision in the case of Sherwood v. Greater Mammoth Vein Coal Co., 193 Iowa 365, 185 N. W. 279, is important. In that case, it was held that quo warranto is the exclusive remedy to test the corporate existence of a private corporation. After discussing various contentions presented, we state at page 377 of 193 Iowa, at page 284 of 185 N. W., as follows:

"And finally, it is contended by appellees that the State alone can raise the question as to the corporate existence of the Excelsior Coal Company.

"We are of the opinion that the last proposition is well taken. This renders it unnecessary to discuss the other questions. * * *

"The instant case is an action in equity, and for injunction, in which appellant seeks to test the existence of the coal company as a corporation. The statute in regard to injunctions is Code Section 4354. The action of quo warranto is provided for by Section 4313 of the Code. Under this, an ordinary action in the name of the State may be brought against a corporation acting as such, or exercising powers not covered by law, and so on. We held, in Harvey v. Kirton, 182 Iowa 973 [164 N. W. 888], and Nelson v. Consolidated Ind. Sch. Dist., 181 Iowa 424 [164 N. W. 874], that in such a case the action of quo warranto is exclusive."

Appellants rely upon the holding of this court in two opinions in the case of School Twp. v. Wiggins, 122 Iowa 602, 98 N. W. 490, and 142 Iowa 377, 120 N. W. 1032. On the latter appeal, the position of this court is concisely stated at page 384 of 142 Iowa, at page 1035 of 120 N. W., as follows:

"If the private rights of the plaintiff were infringed by wrongful assumption of corporate existence and authority on the part of the defendants, this gave the plaintiff a cause of action to redress its private wrong, and this right was quite distinct from the public right to quo warranto proceeding, as was held on the first appeal of the present case. 122 Iowa 602 [98 N. W. 490]."

In the case of State ex rel. Higby v. Higby Co., 130 Iowa 69, 73, 106 N. W. 382, 383, 114 Am. St. Rep. 409, this court applied the same rule in a case where quo warranto proceedings were brought to test the power of the defendant corporation to act in a fiduciary capacity. This court held that the issues involved only private rights and that, the public having no interest therein, quo warranto proceedings could not be prosecuted, stating as follows:

"Finding, as we do, that defendant is organized pursuant to law, plaintiffs' remedy, as already suggested, is not quo warranto; for the public has no interest in a merely private affair. State v. Ferry Co., 11 Neb. 354 (9 N. W. 563); Harris v. R. R. Co., 51 Miss. 602; State v. Bridge Co., 91 Iowa 517 [60 N. W. 121]; Atty. Gen. v. R. R. Co., 35 Wis. 425."

Appellees contend that the rule of the cases last above quoted does not apply here, and rely upon our holding in the case of Nelson v. Cons. Ind. School Dist., 181 Iowa 424, 427, 164 N. W. 874, 876, wherein we state:

"It is quite enough to say that we are quite unaware of acquiescence of bench or bar in the repudiation of the remedy through quo warranto proceedings, recognized by all courts, as well as text books, as exclusive in cases like this. In no case

other than School Dist. Township of Franklin v. Wiggins, 122
Iowa 602 [98 N. W. 490], is an intimation to be found that
corporate existence may be tested otherwise than by quo war-
ranto proceedings, as exacted in Cochran v. McCleary, supra
[22 Iowa 75]. Nor is it clear from the record in that case that
the writer of the opinion intended to hold more than that a suit
in equity might be maintained even though it were necessary,
as a circumstance or incident in the case, that the incorpora-
tion be shown to be merely colorable, and effected secretly and
fraudulently, with the wrongful purpose of attaining results
not authorized by law. In such a case, the alleged organiza-
tion would be but a circumstance or incident in carrying out
the unlawful designs of the perpetrators of the fraud, and un-
doubtedly might be the subject of investigation as an emergent
issue, at the instance of a private litigant. Though some of the
language of the opinion is broader, the allegations of the peti-
tion are in harmony with this interpretation. This view is con-
firmed by a later opinion of this court, filed upon a third ap-
peal (142 Iowa 377), where it appears that final decree was
entered against defendants as directors of this independent
school district, assailed on the emergent issues with reference
to an accounting.''

The opinion in the above case concludes at page 434 of
181 Iowa, at page 878 of 164 N. W., as follows:

"The decisions holding that the legality of the organiza-
tion of a municipal corporation cannot be tested save on suit
in the name of the state, on information in the nature of quo
warranto, and that the validity of such corporation may not
be questioned collaterally, are too numerous for citation; but
see, in addition to those cited, People v. Pederson, 220 Ill. 554
(77 N. E. 251), State v. Several Parcels of Land, (Neb.) 113
N. W. 810, City of Topeka v. Dwyer, 70 Kans. 244 (3 Am. &
Eng. Ann. Cas. 239 and note).

"We are of opinion that plaintiff chose the wrong remedy,
and that this error may not be obviated by a transfer to the

law side of the calendar, as this could not substitute the state as the party instituting the proceeding. The petition should have been dismissed.''

The position taken in the case last above quoted from was expressly adhered to in the case of Harvey v. Kirton, 182 Iowa 973, 981, 164 N. W. 888.

As we read these decisions, the differentiation is to be applied only when the challenge to corporate legality is merely a casual issue in a case involving enforcement solely of private rights which do not relate to questions of a public interest. We are inclined to the view and hold that the issues of corporate legality herein are not merely emergent issues and also that they are such issues that the public has an interest therein. Quo warranto affords the proper remedy. Where it applies it is the exclusive remedy. Accordingly, the contentions asserted in the reply cannot be asserted in this suit in equity.

The relief sought is to secure an accounting for the assets of the Preferred Class Mutual Insurance Company. Plaintiffs assert that they are members of the corporation and stand in the position of stockholders. As such, however, they have no right to a personal judgment in their favor. In the case of Brown v. Conway, 201 Iowa 117, 119, 206 N. W. 665, 666, we state:

''No stockholder has any right to any of the money in the treasury of the corporation at any time until such a fund has been created, either by its officers or by operation of law. If such an action is to be maintained,—that is, an action of accounting for the funds of the corporation,—it must be maintained, if at all, by a suit for the benefit of the corporation, and not by a stockholder in his individual capacity. See Dillon v. Lee, 110 Iowa 156 [81 N. W. 245]; Kennedy v. Citizens' Nat. Bank, 128 Iowa 561 [104 N. W. 1021]; Schoening v. Schwenk, 112 Iowa 733 [84 N. W. 916].''

Plaintiffs are aware of the rule above quoted. They do not ask that judgment be entered in their favor personally, but ask

that a receiver be appointed to whom the accounting should be made for the Preferred Class Mutual Insurance Company. .The legislature of Iowa· has recognized that the appointment of a receiver for an insurance company is a matter in which the public has an interest. Chapter 397 of the Code provides for examination of insurance companies. Section 8625 of that chapter provides that the chapter is applicable to companies organized under chapter 404 of the Code. Both of the companies involved herein were organized under such chapter. Section 8637 provides that no receiver shall be appointed for any such company except upon application of the attorney general. Section 8613.1, appearing in chapter 395 of the Code, which deals with the insurance department, provides that the commissioner of insurance shall be the receiver for any insurance company and shall serve without compensation other than his stated compensation as commissioner of insurance, but shall be allowed clerical and other expenses necessary for the conducting of such receivership. These statutory provisions demonstrate that the subject matter of this litigation is one in which the public has an interest, and that the legislature has so recognized.

In addition to the foregoing considerations, the contract of merger, which the appellants' reply challenges, is recognized by the legislature as being a matter coupled with a public interest, because section 9115 of the Code requires that such contract be submitted to and approved by the commissioner of insurance and the attorney general. In addition to the foregoing, appellants' reply asserts, in division VII thereof, that the business of the Iowa Mutual is affected with a public interest.

The supreme court of Missouri had presented to it, in the case of State ex rel. St. Louis Mutual Life Ins. Co. v. Mulloy, 330 Mo. 951, 957, 52 S. W. 2d 469, 471, a question which seems to be directly analogous to the question presented for our decision herein. The court there states:

"It appears from respondent Licht's bill in equity and his return filed herein that he seeks to recover for himself and others to whom policies were issued prior to the company's re-

organization all property and assets accumulated prior thereto and transferred to it at that time, and this because of alleged illegality in the reorganization. This is clearly an attack upon the company's present corporate existence evidenced by the State's certificate of authority to engage in the insurance business as a stock and mutual company under its duly approved plan of reorganization. Such right having been thus duly granted by the State the legality of steps leading thereto may not be challenged by suits of policyholders, shareholders or private individuals. Such matters can be inquired into only in a proceeding in the nature of quo warranto instituted by a proper officer in behalf of the State. Wells Co. v. Gastonia Cotton Mfg. Co., 198 U. S. 177, 25 S. Ct. 640, 49 L. Ed. 1003; Boatmen's Bank v. Gillespie, 209 Mo. 217, 108 S. W. 74; First National Bank of Deadwood v. Rockefeller et al., 195 Mo. 15, 93 S. W. 761; State ex rel. v. Talbot, 123 Mo. 69, 27 S. W. 366; State ex inf. v. A., T. & S. F. Ry. Co., 176 Mo. 687, 707, 75 S. W. 776, 63 L. R. A. 761. It follows that respondent judge is without jurisdiction to grant such relief in the cause pending before him.''

In the case of Delaney v. A. O. U. W., 244 Mass. 556, 566, 138 N. E. 918, 924, the court expresses the reasons for the rule, as follows:

''It doubtless was designed to prevent hostile attacks upon an institution in which large numbers of persons are interested, except through the instrumentality of a public officer, and to render impossible the harm which might come to a solvent and worthy beneficiary corporation insuring great numbers of people through ill-considered proceedings. The business of insurance is invested with general public interest and is subject to State regulation within rational bounds. Any act of the Legislature directed to this end within reasonable limits will be upheld. * * *

''The effect of the present statute is not to cut off substantial rights, but to provide orderly methods of redressing genuine grievances.''

We are satisfied that the allegations of appellants' reply, which challenge the validity and legality of the contract of merger, executed under date of February 4, 1937, undertake to assert a subject matter which can be entertained only in proceedings in quo warranto. The motion to strike the reply, which is based upon contentions to this effect, was, accordingly, well grounded. Appellants' assignments of error, challenging such ground of the motion to strike, are without merit.

The foregoing considerations dispose of most of the questions presented by this appeal. There are some incidental questions which are not necessarily disposed of thereby, but to undertake to individually review such questions would unduly prolong this opinion. We have carefully considered the contentions of appellants in regard to all such questions. We find them without merit.

The decision is affirmed.—Affirmed.

HAMILTON, C. J., and MITCHELL, STIGER, · HALE, and BLISS, JJ., concur.